UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| OZAN WILLIAMS |
| Plaintiff, |
| v. |
| DELTA BAROMETRE, *et al.* |
| Defendants. |

20-CV-07644 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Plaintiff Ozan Williams ("Plaintiff") brings this pro se action alleging that Superintendent Delta Barometre and the New York Department of Corrections and Community Supervision ("DOCCS") (collectively, "Defendants") violated his constitutional rights by denying adequate medical care for hearing loss. (*See* Compl. at 6, 11 (Dkt. No. 2).)[1] Plaintiff seeks injunctive relief. (*Id.* at 6.) By order dated October 19, 2020, the Court granted Plaintiff's request to proceed in forma pauperis, without prepayment of fees. (Order Granting IFP (Dkt. No. 7).)[2]

In a letter docketed May 21, 2021, Plaintiff requested that the Court appoint counsel on his behalf. (*See* Declaration (Dkt. No. 26).) Plaintiff sets out the prudential factors considered in the appointment of counsel analysis and concludes that "each of [the] factors weighs in favor of appointment of counsel in this case." (*Id.* at 1.) Based on the Court's analysis of threshold questions set forth in *Hodge* and *Ferrelli*, the Court grants Plaintiff's application for the appointment of counsel. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986); *Ferrelli v.*

---

[1] Plaintiff does not use numbered paragraphs for the "Relief Requested" in his Complaint, as such the Court cites to the page number in this instance.

[2] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed in forma pauperis. *See* 28 U.S.C. § 1915(b)(1).

*River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003) (outlining a three-step inquiry to determine whether appointment of counsel is appropriate).

Although there is not a constitutional right to counsel in civil cases, the Court has the authority to appoint counsel for indigent parties.[3] *See* 28 U.S.C. § 1915(e)(1). Yet, "[b]road discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision." *Hodge*, 802 F.2d at 60. When analyzing whether appointment of counsel is appropriate, the Court should undertake a three-step inquiry. *See Ferrelli*, 323 F.3d at 203.

First, "the Second Circuit has interpreted [28 U.S.C. § 1915(e)(1)] to require that the plaintiff be unable to obtain counsel 'before appointment will even be considered.'" *Morris v. Moran*, No. 12-CV-7020, 2014 WL 1053658, at *1 (S.D.N.Y. Mar. 14, 2014) (quoting *Hodge*, 802 F.2d at 61); *see also Justice v. Kuhnapfel*, 982 F. Supp. 2d 233, 235 (E.D.N.Y. 2013) ("A plaintiff requesting appointment of counsel must show that she is unable to obtain counsel before appointment will even be considered." (internal quotation marks omitted); *Williams v. Nicholson*, No. 12-CV-8300, 2013 WL 1800215, at *2 (S.D.N.Y. Apr. 22, 2013) ("Where, in a civil action, an applicant fails to make any effort to engage counsel, appointing counsel for the applicant is not appropriate and should not even be considered . . . .").

Second, the Court "'should . . . determine whether the indigent's position seems likely to be of substance.'" *Ferrelli*, 323 F.3d at 203 (quoting *Hodge*, 802 F.2d at 61); *see also Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) ("This Court considers motions for appointment of counsel by asking first whether the claimant has met a threshold showing of some likelihood of

---

[3] A litigant may demonstrate that he or she is indigent by successfully applying for leave to proceed in forma pauperis ("IFP"). *See Syville v. City of New York*, No. 19-CV-9988, 2020 WL 9171113, at *2 (S.D.N.Y. May 8, 2020). Because Plaintiff has been granted to proceed IFP, he has satisfied a demonstration of indigency.

merit." (internal quotation marks omitted)). In other words, the claim must not be so "highly dubious" that the plaintiff appears to have no chance of success. *Hodge*, 802 F.2d at 60 (internal quotation marks omitted). In making this determination, the Court construes pleadings drafted by pro se litigants liberally and interprets them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *Sommersett v. City of New York,* 679 F. Supp. 2d 468, 472 (S.D.N.Y. 2010).

If these threshold requirements are met, the Court should proceed to consider other prudential factors such as Plaintiff's

> ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented [to the fact finder], the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

*Ferrelli*, 323 F.3d at 203–04 (quoting *Hodge*, 802 F.2d at 61–62); *see also Garcia v. USICE (Dep't of Homeland Sec.)*, 669 F.3d 91, 98–99 (2d Cir. 2011).

Here, with respect to the first prong of the three-step inquiry outlined in *Hodge*, Plaintiff has demonstrated sufficient effort to engage counsel. Specifically, Plaintiff contacted the Legal Aid Society to seek help for his hearing aid repairs on two separate occasions in 2016 and 2017 and directly sought individual counsel in 2018. (*See* Compl. at 26, 29, 35). *See also Jenkins v. Chem. Bank*, 721 F.2d 876, 880 (2d Cir. 1983) (holding that a plaintiff's effort to engage counsel must be a "reasonably diligent effort under the circumstances" (internal quotation marks omitted)). While Plaintiff's effort may not be exhaustive, the Court views Plaintiff's efforts as reasonably diligent under the circumstances given his limited means to bring claims to counsel as a prison inmate. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989) (noting that an indigent plaintiff that is a prison inmate may have no effective means of bringing his claim to the

3

attention of counsel).

Plaintiff also meets the threshold requirement of showing likelihood of merit under a liberal reading of the Complaint afforded to pro se plaintiffs. *See Johnston*, 606 F.3d at 41. Plaintiff alleges that he has been denied adequate medical care for hearing loss through the Defendants' refusal to repair hearing aids. (Compl. at 2, 5–7). Interpreted liberally, Plaintiff's claims allege an Eighth Amendment violation arising out of inadequate medical treatment or a Title II violation under the Americans with Disabilities Act ("ADA") arising out of failure to provide reasonable accommodations.

In order to "establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove deliberate indifference to [his] serious medical needs." *Johnson v. Wright*, 414 F.3d 398, 403 (2d Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). The deliberate indifference standard embodies both objective and subjective components. First, the alleged deprivation must be sufficiently serious such that it may "produce death, degeneration, or extreme pain." *Id.* Second, the charged official must "know of and disregard[] an excessive risk to inmate health or safety . . . be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference." *Id.* (quoting *Farmer v.* Brennan, 511 U.S. 825, 837 (1994)).

In order to establish a prima facie violation under the ADA, the plaintiff must show that "(1) [he] [is] a qualified individual with a disability; (2) . . . the defendants are subject to the ADA; and (3) . . . [he] [was] denied the opportunity to participate in or benefit from defendants' services, programs or activities, or w[as] otherwise discriminated against by defendants, by reason of [the] plaintiff['s] disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). A plaintiff may allege such violations under three theories: disparate treatment, disparate

4

impact, and failure to make reasonable accommodation. *Reg'l Econ. Cmty. Action Prgram, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002).

Although Plaintiff alleges that "there has been avoiding and procrastinating" by prison staff, numerous letters and reports show that Plaintiff received medical attention and examination by a primary care provider and audiology specialist. (*See* Compl. at 6, 28, 30, 32). In addition, the audiology specialist described Plaintiff's hearing loss as "non-significant." (Compl. at 28). However, both the repeat nature of Plaintiff's requests for improved hearing aids and the two most recent inmate misbehavior reports raise a plausible claim of disregard towards Plaintiff's medical needs. Specifically, the two inmate misbehavior reports dated March 2, 2019 and June 11, 2019 suggest that Plaintiff may not have complied with the standing count due to his hearing loss because he did not move towards the cell door after instructed to do so through the facility's loud speakers. (*See* Comp. at 39–40). According to both inmate misbehavior reports, Plaintiff also failed to immediately comply with direct verbal orders during the count, which further raises the possibility that Plaintiff's hearing loss had reached a point of degeneration. *Id.* To the extent that Plaintiff alleges continued and intentional disregard towards his health needs through these inmate misbehavior reports, the claimed deprivation may be sufficiently serious to amount to an Eighth Amendment violation. (*See* Comp. at 39–40); *see also Johnson*, 414 F.3d at 403. Therefore, it is plausible that Plaintiff can demonstrate seriousness of deprivation or deliberate indifference to his medical needs.

For similar reasons, it is plausible that Plaintiff can show that Defendants failed to make reasonable accommodation. A reasonable accommodation is measured by its effectiveness and does not need to "be perfect or the one most strongly preferred by the []plaintiff." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015) (internal quotation

marks omitted). As noted above, while various letters and reports indicate that Plaintiff received medical attention and examination in response to grievances, such medical attention may nevertheless have been insufficient to allow Plaintiff to reasonably comply with ordinary facility procedures such as the standing count.

Lastly, the prudential factors favor granting Plaintiff's application for the appointment of counsel. First, Plaintiff will likely have limited ability to investigate the facts relevant to his claims because he is incarcerated. *See Hendricks v. Coughlin*, 114 F.3d 390, 394 (2d Cir. 1997) (holding that the plaintiff's incarceration "severely limit[ed] his ability to investigate and present the crucial facts"). Second, Plaintiff will likely require the assistance of someone with medical expertise in order to address the nature and severity of his hearing loss. *See Johnson v. Bendheim*, No. 00-CV-0720, 2000 WL 1705785, at *1–2 (S.D.N.Y. Nov. 13, 2000) ("Plaintiff's ability to investigate . . . will likely be limited to, in large measure, the need for expertise in medicine and the judgments made by health care providers when determining the appropriate course of conduct to pursue with a given patient."). Moreover, the legal issues implicated by claims of deliberate indifference to medical needs under the Eight Amendment are often complex and "may require a level of analysis that is beyond [the] plaintiff's ability." *Lombardo v. Goord*, No. 99-CV-1676, 1999 WL 983875, at *2 (S.D.N.Y. Oct. 28, 1999).

For the reasons discussed above, Plaintiff's request for assignment of counsel is granted. The Clerk is respectfully directed to mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: July 14, 2021
      White Plains, New York

KENNETH M. KARAS
United States District Judge